IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| OPTICSPLANET INC.,<br><br>PLAINTIFF,<br><br>v.<br><br>POWERUP, INC., a Michigan corporation d/b/a PBTT, ALEXANDER DERDERIAN, DAVID HANOUTE, TONY MAINPRIZE, GREGORY DERDERIAN,<br><br>DEFENDANTS. | Case No. 25-cv-2623 |

**COMPLAINT**

Now comes the Plaintiff. OpticsPlanet, Inc. an Illinois Corporation, by and through its attorneys Netzky Olswang Hanlon, LLC and complains of the Defendants POWER UP INC., a Michigan corporation d/b/a PBTT, ALEXANDER DERDERIAN, DAVID HANOUTE, DAVID HANOUTE, AND TONY MAINPRIZE, and states as Follows:

**Parties**

1) The Plaintiff, OpticsPlanet, Inc. is an Illinois Corporation doing business at 3150 Commercial Ave. Northbrook, Illinois 60062.

2) Defendant "POWER UP Inc. doing business as PBTT" has its headquarters at 9393 Oakmont Drive, Gand Blanc, Michigan 48439.

3) Defendant, ALEXANDER DERDERIAN, holds himself out to be the President of POWER UP Inc., and is a citizen of Michigan with his address at 9393 Oakmont Dr. Grand Blanc, Michigan 48439. Alexander Derderian was at all times relevant to this cause a director of POWER UP, INC.

4) Defendant, DAVID HANOUTE, holds himself out to be treasurer of POWER UP Inc., and is a citizen of Michigan residing at 10306 Jewell Lake Ct., Fenton Michigan 48430. DAVID HANOUTE was at all times relevant to this cause a director of POWER UP INC.

5) Defendant, TONY MAINPRIZE, holds himself out to be the Corporate Secretary of POWER UP, INC. and is a citizen of Michigan residing at 126 E. GRAND BLANC RD. GRAND BLANC, MI 48439. TONY MAINPRIZE was at all times relevant to this cause a director of POWER UP INC.

6) Defendant, GREGORY DERDERIAN, is a Citizen of the State of Michigan and holds himself out to be a director of Power-Up Inc. GREGORY DERDERIAN was at all times relevant to this cause, a director of POWER UP INC.

## Jurisdiction and Venue

7) This Court has jurisdiction pursuant to 28 U.S.C. 1331 because this complaint raises federal questions associated with the Lanham Act 15 U.S.C. §§ 1051 et seq. This Court also has Diversity Jurisdiction pursuant to 28 U.S.C. 1332(a) because there is complete diversity of parties and the amount in controversy is in excess of $75,000. This Court also has supplemental jurisdiction pursuant to 28 U.S.C. S1367.

8) Venue is proper in this district pursuant to 28 U.S.C. "1391(a) and (c). Many of the acts and transactions giving rise to the violations of law complained of herein occurred in this district.

9) In connection with the acts and conduct complained of, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including the mails and interstate telephone communications to further this fraudulent course of conduct.

## Short Statement of the Case

10) On or about 10/14/20 Plaintiff began doing business with Power Up Inc. DBA PBTT, a manufacturer of goods sold under a logo bearing the name MAGNITE. In the parties' written

contract, Defendant POWER UP, INC represented that it was owner of the intellectual property associated with the subject matter of its products and licensed Plaintiff to its trademarks and intellectual property known as "TRYBE and associated logos". Amongst its logos was "MAGNITE" which was not a registered mark at that time. Plaintiff, an online retailer/re-seller of goods, thereafter marketed and sold the products manufactured by Defendant. Between October of 2020 and the present, Plaintiff on 38 separate occasions ordered goods from defendant. In March of 2023, the State of Michigan dissolved Power UP INC. No notice was provided to Plaintiff by any of the defendants that POWER UP INC was dissolved and by all outward measures Power Up appeared to continue in its corporate existence. On or about April 30, 2024, a trademark registration for MAGNITE was issued to "PBTT, a Michigan Corporation" which did not exist at that time and still does not exist. PBTT had been a DBA for POWER UP, INC. After POWER-UP, INC sold Plaintiff Genuine goods labeled with the MAGNITE logo under the parties' contract, Defendant, ALEXANDER DERDERIAN, issued a cease-and-desist letter to Plaintiff demanding Plaintiff no longer market the goods manufactured under the MAGNITE name, asserting that PBTT had all right and title to the MAGNITE goods. In the absence of the ability to continue under the parties' contract and course of dealing, Plaintiff will suffer direct financial losses of approximately $700,000 in inventory it would not be able to sell if it complied with the Demands of Mr. ALEXANDER DERDERIAN. The failure to fulfill its orders will cause not only a loss of the inventory but will also cause Plaintiff to suffer an injury to its reputation for failing to deliver goods promptly. This complaint has two counts. A count for Breach of Contract and a count seeking Declaratory and Injunctive Relief.

## Allegations Common to All Counts

11) The parties entered into a contract on October 14, 2020, whereby the Plaintiff agreed to purchase certain products manufactured by the Defendant for sale by Plaintiff. A copy of said contract is attached hereto and made a part hereof and marked as "Exhibit A".

12) In said contract the Defendant maintains that it is an Indiana Corporation. Review of the Indiana Secretary of State records reveals that Defendant Power Up, Inc., DBA PBTT was, in fact, a Michigan Corporation previously registered as a foreign corporation registered to do business in Indiana.

13) Defendant, Power Up, Inc., is not registered to do business in Illinois and has not been registered to do business in Illinois.

14) On March 30, 2023, Defendant Power Up, Inc., was dissolved by the State of Michigan. Each of the other named defendants exercise control over what was Power Up Inc.

15) The defendant represented that it was the owner of all trademarks and intellectual property of goods sold to plaintiff, including, but not limited to, the trademarks TRYBE and associated logos, including and specifically MAGNITE. (Exhibit A paragraph 4)

16) The agreement provides that it should be governed by the laws of the State of Illinois. (Exhibit A paragraph 15)

17) On or about April 30, 2024, the individual Defendants obtained a trademark registration for MAGNITE under the name of "PBTT Inc." purportedly a Michigan corporation. However, according to the Corporations Division of the State of Michigan, "PBTT, Inc." is not a Michigan corporation. Thus, the Mark's registration is not valid as there was no Michigan corporation in existence to have obtained the Trademark issued by the U.S. Patent and Trademark office.

18) Following the execution of the agreement, Plaintiff, an online retailer, purchased products manufactured by Defendant bearing the MAGNITE mark exceeding $1,575,000.

19) The goods acquired by Plaintiff bearing its trademark MAGNITE are unaltered and genuine and sold in the unaltered form as delivered by Defendants.

20) The contract provides that the agreement will automatically renew for 1-year terms on the anniversary date unless either party provides written notice of nonrenewal 60 days prior to the expiration of the current term. (Exhibit A paragraph 6).

21) Neither party to the agreement exercised the non-renewal option prior to the anniversary date of 10/14/24.

22) Defendant failed to provide 60 days' written notice prior to the October 14th renewal date of an intent to cancel the contract, thus breaching the explicit terms of the agreement.

23) On March 4, 2025, the Defendant provided written notice to Plaintiff that effective March 3, 2025, that it was to discontinue all use of the trademark addressed in the contract attached as "Exhibit A". Said letter is attached hereto and made a part hereof and marked as "Exhibit B".

24) Plaintiff has fully performed all of its obligations under the contract.

25) The contract explicitly provides that the Plaintiff shall have the right to sell all remaining stock of products in Plaintiff's possession following termination of the agreement. (Ex A, #6).

26) Since the formation of the parties contract, Plaintiff has ordered over $1,700,000 of defendants goods with the MAGNITE logo and paid for over $1,575,000 for goods actually delivered with said logo.

27) At this time, Plaintiff has in its possession $700,000 in goods with the MAGNITE logo covered by the contract attached in Exhibit A.

28) The Defendant's demand for immediate termination of the contract is a breach of the terms of the original agreement or reasonably creates the anticipation of breach by Defendants.

29) ALEXANDER DERDERIAN's demand has resulted in the Plaintiff being damaged by being unable to sell or distribute approximately $700,000 in products in Plaintiff's possession.

Furthermore, Plaintiff's reputation has been harmed due to an inability to fulfill its obligations and orders.

30) Defendants, ALEXANDER DERDERIAN, DAVID HANOUTE, DAVID HANOUTE, AND TONY MAINPRIZE, and GREGORY DERDERIAN continue to operate PowerUp, Inc. dba PBTT without any corporate formality.

31) Defendants, ALEXANDER DERDERIAN, DAVID HANOUTE, DAVID HANOUTE, TONY MAINPRIZE, and GREGORY DERDERIAN, disregarded all corporate formalities and treated the Power UP Inc. as a conduit for their own personal business, thus necessitating the imposition of personal liability to avoid injustice.

32) Paragraph 5 of the Contract allows for the recovery of attorney fees and costs in its indemnification paragraph.

33) The Plaintiff has no adequate remedy at law should its business reputation be harmed in this manner.

34) Injunctive relief is necessary to preserve the status quo and allow the Plaintiff to dispose of its remaining MAGNITE product consistent with the terms of the Contract.

35) Plaintiff is likely to succeed on the merits of its Complaint as the contract at issue explicitly provides that it is permitted to sell all products remaining in its possession following termination of the Contract. (Ex. A #6) Moreover, plaintiff is likely to succeed on the merits under the "First Sale Doctrine".

36) The formation of the Contract between PowerUp, Inc and Plaintiff was completed in Illinois on 10/15/2020. See Contract document page 5.

**COUNT I**
**Breach of Contract**

37) Plaintiff restates paragraphs 1-36 as if fully set forth in this Count I.

38) Plaintiff and defendant, PowerUp Inc., came to a mutual agreement coupled with consideration for the sale of goods in excess of $500. The mutual manifestation of assent to the parties' agreement is memorialized in that contract agreement attached hereto and incorporated herein as Exhibit A.

39) The contract provided for economic consideration for its terms.

40) Defendant breached the Agreement when defendant issued a cease and desist letter that was directly against the express terms of the written agreement shown in Exhibit A.

41) Plaintiff has suffered an injury as a result of the breach by the Defendant and also suffers irreparable injury to its reputation because the breach of contract exposes Plaintiff to reputational loss for not being able to meet the orders of its customers.

Wherefore, the Plaintiff OPTICSPLANET, Inc. prays that this Honorable court grant the following relief

A) Enter Judgment in its favor and against each of the defendants in the amount of $700,000 plus any and all further relief as the Court deems appropriate.

B) Order Defendant's specific performance of the Agreement on a temporary basis and permanent basis to allow Plaintiff to liquidate the goods purchased from Defendants until such time as Plaintiff has liquidated all of its product bearing the MAGNITE logo.

C) Grant Plaintiff a Temporary Restraining order preventing Defendant from undertaking any action to prevent Plaintiff from selling its merchandise having the MAGNITE logo.

D) Grant Plaintiff a Preliminary Injunction and permanent injunction preventing Defendant from undertaking any action to prevent Plaintiff from selling its merchandise having the MAGNITE logo.

E) Award Plaintiff its reasonable attorney fees and costs pursuant ot paragraph 5b of the Contract document.

F) For such other and further relief as this Court deems just and equitable.

**COUNT 2**
**Declaratory Judgment Plead in the Alternative to Count I**

27) Plaintiff restates and incorporates by reference the allegations contained in Count 1 as though fully set forth herein.

28) There is an actual controversy between the parties to this action in which Plaintiff requires direction form this Court as to how to proceed, which is of such sufficient immediacy and reality to warrant the issuance of declaratory and injunctive relief.

29) The "First Sale Doctrine" is a long established black letter doctrine of Trademark law applicable in this case. That doctrine prohibits Defendants efforts to prevent the re-sale of the genuine goods. See *Maui Jim v. Smartbuy Guru Enters.*, 459 F. Supp. 3d 1058; *Std. Process, Inc. v. Total Health Disc., Inc.*, 559 F. Supp. 2d 932.

30) Of the remaining inventory, all of the goods acquired by Plaintiff from Defendants all are "Genuine Goods". Plaintiff has not materially altered or repackaged the MAGNITE goods it purchased from Defendants.

31) Plaintiff is in immediate danger of suffering a direct injury as a result of the defendants' conduct in attempting to divest Plaintiff of its rights to sell the merchandise it has acquired at great expense.

32) On or about March 4, 2025, the defendant PBTT directed the Plaintiff to stop the use and distribution of products bearing trademarks purportedly owned by PBTT. (See Exhibit B attached hereto and made a part hereof)

33) At the time that Plaintiff received said demand it was in possession of approximately $700,000 worth of products bearing the relevant trademarks that had been previously purchased and paid for from Defendant.

34) The contract attached as Exhibit A provides that if either party wishes to cancel the contract, they must give 60 days' written notice before the renewal date of October 14th. Otherwise, the contract automatically renews for one year. (Ex A #6)

35) Prior to March 4th, 2025, neither party had given written notice of an intent to cancel the agreement.

36) The contract explicitly provides that the plaintiff shall have the right to sell all remaining stock of products in its possession following the cancellation of the contract. (#6)

37) PBTT has threatened Plaintiff with legal action if it does not immediately discontinue sales of the products in question including orders in process and remove all references to same from Plaintiff's websites. (Exhibit C)

38) Compliance with Defendants' demands would prohibit Plaintiff from fulfilling existing orders and that would cause irreparable harm to Plaintiff's business reputation.

39) The Plaintiff has no adequate remedy at law to compensate it for such harm to its business reputation.

40) An actual controversy exists between the parties as the Defendant's demands are contrary to the plain language of the contract regarding the disposal of the remaining products in Plaintiff's possession.

41) The Plaintiff brings this action to determine that the provision to sell and distribute the remaining products in its possession is enforceable and Defendant must honor same.

Wherefore, Plaintiff, OpticsPlanet, Inc. an Illinois Corporation, by and through its attorneys Netzky Olswang & Hanlon, LLC, asks this Honorable court to enter Judgment in its favor and against

the Defendant Power Up Inc. D/b/a PBTT Inc. a Michigan Corporation and the individual named defendants as follows:

1) Declare that the Trademark issued by the U.S. Patent and Trademark office for "MAGNITE" as registration number 7,374,878 is not valid.

2) Declare that the contract entered into between PowerUp Inc., DBA PBTT and Plaintiff permits the Plaintiff to sell and distribute the products in its possession that are covered by the underlying agreement including the future marketing and sale of all genuine goods with the MAGNITE logo.

3) Award Plaintiff its reasonable Attorney Fees and costs under the parties indemnity agreement.

JURY DEMAND

Plaintiff demands trial by jury on all claims so triable.

Respectfully submitted:

/s/*Robert T. Hanlon*

ROBERT T. HANLON
One of Plaintiffs' Attorneys

Robert T. Hanlon
Netzky Olswang & Hanlon LLC
8605 West Bryn Mawr, Suite 309
Chicago, Illinois 60631
robert@nohlawchicago.com
robert@robhanlonlaw.com
312/622-7325

Exhibit A - the contract document
Exhibit B - the 3/4/25 cease and desist letter.
Exhibit C - the 3/4/25 email from Alex Derderian to Alex Royzen.